**NO. 25-20487**

_____

## IN THE FIFTH CIRCUIT COURT OF APPEALS

_____

LESLIE BALES AND BRYAN BALES,

Plaintiffs – Appellants,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT
AND RITA GRAVES,

Defendants – Appellees.

_____

**ON APPEAL FROM**
U.S. District Court, Southern District of Texas
No. 4:24-CV-94958

_____

**BRIEF OF APPELLANTS LESLIE BALES AND
BRYAN BALES**

_____

Submitted by:
 /s/ Jack E. Urquhart
**Jack E. Urquhart**
State Bar No. 20415600
jack.urquhart47@gmail.com
1302 Waugh Drive, No.880
Houston, TX 77019
Phone: 832-723-2351


**COUNSEL FOR APPELLANTS**


**CERTIFICATE OF INTERESTED PARTIES**

1

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Houston Independent School District | Paul Lamp Houston, TX |
| Rita Graves | Paul Lamp Houston, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Leslie Bales | Jack Urquhart,  Houston, TX |

Bryan Bales                                      Jack Urquhart, Houston, TX

/s/ Jack Urquhart
Jack Urquhart
*Counsel of record for Appellants*

## REQUEST FOR ORAL ARGUMENT

Pursuant to 5TH CIR. R. 28.2.3, Appellants request that the Court schedule oral argument in this case. This case presents several issues of complex fact. The Court would likely benefit from permitting oral argument so that counsel may address any questions the Court might have.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES--------------------2

REQUEST FOR ORAL ARGUMENT----------------------------3

TABLE OF CONTENTS-----------------------------4

TABLE OF AUTHORITIES-----------------------------------4

JURISDICTIONAL STATEMENT---------------------------------6

STATEMENT OF ISSUES------------------------------------7

STATEMENT OF CASE-----------------------------------------8

SUMMARY OF THE ARGUMENT--------------------------------10

ARGUMENT------------------------------------------------------11

CONCLUSION--------------------------------------------------29

CERTIFICATE OF COMPLIANCE----------------------------------29

CERTIFICATE OF SERVICE-----------------------------------30

# TABLE OF AUTHORITIES

*Hughes v.  Garcia*, <u>100 F.4th 611</u>(5th Cir. 2024)---------22


*Kinney v. Weaver*, <u>367 F.3d 337</u> (5th Cir. 2004)---------21

*Spokeo, Inc. v. Robins*, <u>578 U.S. 330</u> (2016).-------------11

Taylor v. Riojas, <u>592 U.S. 7, 9</u> (2020). --------------------21

*Uzuegbunam v. Preczewski*, <u>592 U.S. 279</u> (2021) --------11


<u>28 U.S.C. § 1291</u>-----------------------------------------------6

<u>28</u> U.S.C.  § 134=-----------------------------------------------6

<u>28 U.S.C. §§ 1331</u>-----------------------------------------------6

<u>42</u> U.S.C.  §  1983-----------------------------------------------10


Fed, R. Civ, P 12(b)(1)-------------------------------------7

Fed, R. Civ, P 12(b)(6)-------------------------------------7

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Appellant's claims arise under federal law, the Due Process Clause of the Fourteenth Amendment.

The district court entered a final judgment disposing of all claims with prejudice. Appellant timely filed a Notice of Appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the appeal is taken from a final decision of the district court.

## STATEMENT OF THE ISSUES

This appeal presents the following issues:

1.  Did the district court err in granting a 12(b)(1) dismissal of all Bryan Bales claims for lack of standing?

2.  Did the district court err in granting a 12(b)(6) dismissal of Leslie Bales' against Rita Graves based on qualified immunity?

3.  Did the district court err in granting a 12(b)(6) dismissal of Leslie Bales' 14th Amendment racial discrimination claims against Rita Graves claims against Rita Graves.

4.  Did the district court err in granting a 12(b)(6) dismissal of Leslie Bales' 14th Amendment due process claims against Rita Graves?

5.  Did the district court err in granting a 12(b)(6) dismissal of Leslie Bales' First and 14th Amendment retaliation claims?

6.  Did the district court err in granting a 12(b)(6) dismissal of Leslie Bales' claims against Houston Independent School District?

7.  Did the district court err in denying Plaintiff's request to amend?

## STATEMENT OF THE CASE

March 1, 2023, Plaintiffs' daughter Maegan brought lunch to her brother Ethan at Lamar High School in Houston , Texas where he was a student. When Megan was returning to her car, an HSID employee, Officer Davis, Abruptly pulled in front of her with a golf cart nearly hitting. Suzanne Acord, an HISD employee, began embarrassing and humiliatingly shout at her. Maegan, fearing for her safety and concerned about her brother, stood and endured Acord's rage. When The Acord finished her rant, Maegan walked back to her car and left as Davis and Acord stared at her intimidatingly.

Maegan called her parents, Plaintiffs Bryan and Leslie Bales who drove to the school to meet or schedule an appointment with a school administrator to complain about the treatment Maegan had received from Acord and Davis.

From the moment the Bales reached the school and began walking to the main entrance to reach the Welcome Center, they faced hostility and threats from HISD employees. Two armed officers followed them to the main entrance shouting at them. When the Bales neared the main entrance to the school, Acord emailed Defendant Rita Graves the principal of Lamar High School to alert that the Bales

were on the campus. The Bales had been to the high school many times before without incident.

The purpose of the Bales visit was simple. They wished to voice a complaint about their daughter's treatment. As will be described later in more detail, The Bales were never permitted to voice their complaint, and Defendants used their power to suppress the Bales right to speak critically of HISD and its employees. The most frequently used means to suppress the Bales speech was to intimidate them by denigrating them with attacks. They were also physically threatened. They were threatened with jailing. Graves issued a CRIMINAL TRESPASS NOTICE to Leslie Bales, a Black woman, but did not issue such a warning her husband Bryan, a white male.

Frustrated and emotionally distraught, the Bales filed a formal grievance. Immediately after the grievance was filed, Defendants began to retaliate against the Bale's son Ethan. In desperation, the Bales son. In desperation, the Bales filed a second grievance for the retaliation. The grievance process itself was used as another tool to suppress the Bales right to speak critically of HISD and its employees as will be discussed later in more detail. Defendants unlawfully delayed The grievance process by more than 13 months.

The Bales  have seen no evidence that their complaints were heard or investigated. They have, however, seen Defendants efforts to publicly and viciously personally attack their character and worth.

When the HISD School Board finally heard the Bales grievance, they deliberated for 10 minutes and approved of all HISD conduct.

The Bales filed suit under 42 U.S.C. §  1983 complaining of the violation of their constitutional rights under the First and Fourteenth Amendments. ROA. 6-56.

Defendants filed a motion to dismiss on the pleadings. ROA. 86-99. Plaintiffs responded ROA, 103-119. Defendants replied. ROA. 121-127.

The district court entered an order granting Defendant's motion to dismiss. ROA. 175-197. The district court then entered final judgment. ROA. 198.

Plaintiffs filed a timely notice of appeal from the order and final judgment. ROA. 199-200.

## SUMMARY OF THE ARGUMENT

Plaintiff's complaint meets the factual well the pleading standards and the erred  granting the order and judgment of dismissal that should be reversed and remanded is the District Court for further proceedings.

**ARGUMENT**

### I.    Standard of Review.

This standard of review is de novo. All factual pleadings in the Plaintiffs complaint must be accepted as true, and all inferences must be drawn in favor of Plaintiff.

### II.    Issue One: Did the district court err in granting a 12(b)(1) dismissal of all  Bryan Bales claims for lack of standing?

In the Complaint Bryan Bales alleged facts sufficient to meet Article III standing requirements on all claims, and the grant of the 12(b)(1) motion is error. Specifically, the Complaint, when all factual allegations are accepted as true, and all inferences favor Plaintiffs, the Complaint meets the requirement of stating particularized injuries that affect Bryan Bales in a personal and individual way. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 *(2016).* The 12(b)(1) dismissal of all claims against Bryan Bales  is error and must be reversed. The dismissal was also error because Bryan Bales claim for nominal damages also confers his standing to bring his claims. ROA.55 *Uzuegbunam v, Preczewski,* 592 U.S. 279 (2021.

Fundamentally, the district court's analysis of Plaintiffs' First Amendment claims are grounded on an incorrect premise. Plaintiffs claim that Defendants used multiple means to achieve the common end of suppressing  their right to

speak out. The district court, instead, based its decision, including its standing decision on the notion that Bryan Bales free speech claim is limited is limited to a discrete event—the issuance of the Notice. This is evident from the following statement in the district court's order.

> As alleged in the Complaint, Plaintiffs' viewpoint discrimination, equal protection, and due process claims are based on the Notice issued by Graves to Ms. Bales-a decision that was affirmed by HISD throughout a lengthy grievance process.

ROA. 184. This incorrect premise resulted in the error of concluding that Bryan Bales lacks Article III standing.

The district court's incorrect characterization of the Complaints' factual allegations inevitably led other errors in its 12(b) analysis. It is, therefore, necessary discuss the Complaint's actual factual allegations is some detail. The following facts alleged in the Complaint were glossed over or entirely ignored in the district court's order, and are important to both Bryan Bales Article III standing, and most on all issues raised in this appeal:

1. This matter began as a desire by the Bales to voice their concerns with a school administrator about two HISD employees, Acord and Davis, who the Bales felt had badly mistreated their adult daughter Maegan. March 1, 2023. On that day, Maegan was returning to her car after handing lunch to her brother Ethan who was a student a Lamar High School. Davis used his

golfcart to block Maegan's walk by abruptly turning in front of her and nearly hitting her. <u>ROA. 9</u>  ¶¶ 19-20.

2.

3. After this Davis's barely missing Maegan with his golfcart, Acord began to rant at Maegan in words, tone, and volume that expressed a hostility completely disconnected with the events and in a public setting. Maegan felt physically threatened and  deeply humiliated.  Concerned I for her brother and herself, she called her parents form her car. <u>ROA. 9</u> ¶¶  20-21.

4. The Bales live near the school and drove to the school wanting to speak with or get an appointment with an administrator to complain of Davis' and Acord's conduct. When the Bales arrived and were walking toward the Welcome Center Acord admits she emailed Graves that the Bales on campus.  <u>ROA. 11</u> ¶ 29.

5. As the Bales continued to walk together to the main entrance, two armed officers followed them shouting something they could not make out.  ROA. <u>ROA. 11</u> ¶  28.

6. As the Bales neared the Welcome Center, Antrice Axel left her station, went into the hallway, and excitedly looked in the direction from which the Bales and the officers following them would approach, and rushed back to her station. ROA. 11-12 ¶¶ 33-34.

7. The Bales entered the Welcome Center together as a couple and walked to the reception desk together. ROA. 12 ¶ 35.

8. When the Bales reached the reception desk, Axel had already started the sign in process. Axel knew the Bales and knew they were parents of student. She had signed them in before without incident. ROA. 12 ¶ 37.

9. Axel told the Bales that Graves was not on campus. The Bales said that was okay, but they did want to meet or make an appointment with an administrator to make a complaint. ROA. 12 ¶¶ 38-39.

10. Although Axel was already signing in the Bales, Polio interjected herself by popping up from her station, and asked Btyan if she could help him--as if Bryan and Leslie were not together. The Complaint factually explains

the reason both of the Bales immediately identified Polio's unnecessary intervention as a racial slight. As a mixed race couple, the Bales often experienced this same race-based slight, *i.e.,* the artificial and hurtful implication that a black woman and white man could not possibly be together even though they clearly were. Neither Polio nor Axel were questioned by Defendants' about the propriety of Polio's intervention. ROA. 12-13 ¶ ¶ 40-42; ROA. 13-14 ¶ ¶ 44-49; ROA. 39 ¶ 176; ROA. 40 ¶ 180.

11. Axel's version of the Bales' supposed misconduct is not supported by other HISD employees, including Polio, and is, to say the least, questionable based on facts set out in the Complaint. At most, Axel's version, which is accepted as absolutely true by HISD and embraced by the district court, raises a fact issue not pertinent to a 12(b) analysis that must accept Plaintiffs' pleaded facts at true. ROA. ROA. 36-42 ¶ ¶ 159-190.

12. The contradictions between Polio's and Axel's versions of the sign in events was never explored by Graves or any HISD employee despite the "lengthy grievance process." *Id.*

15

13. The Complaint does not simply allege that the Bales were "monitored" while they were waiting in the Welcome Center to meet an administrator. The Complaint details the humiliating and dehumanizing facts of that monitoring. ROA. 14-16 ¶ ¶ /49-56.

14. When Mary Ellen Fernandez finally arrived with Davis by her side, she did not simply "schedule an appointment." The Complaint factually details that Fernandez escalated the HISD employee hostility intended to prevent the Bales from raising concerns about Maegan's treatment by HISD. ROA. 16-17 ¶ ¶ 59-62.

15. The Complaint factually alleges that on the same day, March 1, 2023, Graves and Fernandez began to work on assembling what they could to personally attack Leslie and Bryan Bales, without evaluating the merit of the information available to them and use their personal attacks to discourage the Bales from speaking out. ROA.17 ¶ /63-64.

16. The Complaint does not summarily allege that the Bales did not get to "air their many grievances" at the appointed March 2, 2023, meeting. Rather, it provides specific factual details about what HISD employees Fernandez

and Gillespie did in the meeting to threaten the Bales, intimidate them, put them on the defensive, personally attack them, and further attempt to stifle their right mot only to speak, but even to conduct their routine banking business. ROA. 17-21 ¶ ¶ 66-80.

17. The district court makes no mention at all of the Complaint's factual allegations about the events of March 3, 2023. However, the Complaint factually details the injury-threatening and intimidating misconduct of Davis. While doing their routine banking at a bank located on the school campus, the Bales were subjected to HISD conduct that threatened their physical safety. Davis drove his golf cart directly at the Bales and would have hit them had they not reacted quickly enough to barely avoid Davis's cart. ROA. 21-22 ¶ ¶ 81-88. Defendants' did nothing to investigate Davis' life-threatening intimidation. From these facts it is a reasonable inference that Davis' violence was intended to suppress the Bales complaint about his and Acord's mistreatment of Maegan.

18. The district court omits the Complaints allegations of Graves' multiple knowing untruths used in the Notice as pretext to support the issuance of

the Notice. <u>ROA. 32-34</u> ¶ ¶ 138-148; <u>ROA. 38-39</u> ¶ ¶ 170-175; ROA. <u>ROA. 40-41</u> ¶ ¶ 183-190.

19. When characterizing Plaintiffs' retaliation claim, the district court omit I s the Complaint's factual allegations that Plaintiff's son was never disciplined prior to the Bales initiating a grievance, but immediately after the grievance was initiated, Ethan (a) was photographed by Acord without reason; (b) received a dress code violation that the school rarely enforced, (c) Ethan was not just "pulled out of class" by a school administrator, the administrator shouted at Ethan in hall falsely accusing him of stealing school clothes and threatening to suspend him: (e) the administrator's shouting was so loud that the teacher left the classroom to check on Ethan; (f) Ethan's attendance records began to be misstated; (g) Graves's selectively and aggressively reprimanded Ethan in public for eating lunch off-campus which students frequently did without signing out (h) Graves herself never reprimanded any other student in public and was rarely seen outside her office, and (i) Graves inserted herself in one of Ethan's classes, sat next to him, talked to him while the class was ongoing, and complained of Ethan's "attitude" when Ethan said he really should not be talking with her. <u>ROA. 42-44</u> ¶ ¶ 191-205.

20. The district court's characterization of the grievance process entirely omits the Complaints factual allegations that support the Bales' claim Fed, R. Civ, P 12(b)(1 that the grievance process was not a used as a means of hearing and fairly considering and evaluating the Bales points of view. It was, instead, a pretext to suppress and discourage the  Bales from voicing their criticism of HISD and its employees. Defendants used the process to suppress the Bales criticism of HISD. As the Complaint factually alleges the process was misused to cause delay, expense, and personally discredit the Bales so they would not continue their efforts to have their viewpoint heard. The process, which by law, should have reached the Board within 90 days was drug on for more than 13 months. ROA. 32-34 ¶ ¶  134-190.

.

The Complaint read as a whole, taking all factual allegations as true , and drawing all inferences in favor of the Plaintiffs plausibly establishes Bryan Bale's Article III standing to bring the claims he alleges. The district court erred in cabining Bryan Bales's  emotional injury claim to the single event of the notice issue and incorrectly concluding that Bryan's injury from that, if any, was "self-inflicted."

 The following factual allegations are in the Complaint. Bryan Bales himself, and not just his wife, was denied his right speak out about the

19

mistreatment of his daughter Maegan by HISD employees Acord and Davis. Bryan Bales himself, not just his wife, was followed and shouted at by armed HISD Police as he walked from his car to the Welcome Center to speak his complaint to a school administrator. Bryan Bales himself, and not just his wife , was subjected to Polio's racial slight. Bryan Bales himself, not just his wife, was as he sat waiting subjected to the humiliation and dehumanization of monitoring, intimidation, and threats of jailing as if he were a threat or otherwise unworthy of the common respect due a parent. Bryan Bales himself, not just his wife, was denied his right to speak and, instead, was berated and demeaned by HISD employees Fernandez and Gillespie during the March 2, 2023, meeting. March 3, 2023. Bryan Bales himself, and not just his wife, was nearly run over by a violent Davis as Bryan went about his routine banking business. Bryan Bales himself, and not just his wife, was personally attack at every "level" of the supposed grievance process in which HISD employees and representatives vocalized as if it were Gospel truth that he and his wife acted outrageously in the Welcome Center March 1, 2023, and were beneath contempt for daring to wish to attempt to voice complaints about HISD that included the misleading statements and fabrications that Graves' used to support the Notice. Bryan Bales himself, and not just his wife, bore the economic and emotional burden of the unjustifiable delay in the grievance process that violated state law. Bryan Bales

himself, and not just his wife, appeared before the HISD School Board and endured the public personal humiliation from HISD representatives who proclaimed as certainties allegations of the Bales misconduct that the Bales have denied  and which HISD has  never fairly investigated or vetted.   Bryan Bales himself, and not just his wife, endured Defendants' retaliation against his son Ethan for a grievance that Bryan had filed. These factual allegations in the Complaint sufficiently support Bryan Bales claims of economic and emotional injuries that are particularized and affect Bryan Bales in a personal and individual way. The district Cout erred in granting the 12(b)(1) motion.

Moreover, Bryan Bales claim for nominal damages alone supports his Article III standing.

### III.    Issue Two: Did the district court err in granting a 12(b)(6) dismissal of  Leslie Bales' against Rita Graves based on qualified immunity

The district court erred in granting qualified immunity to Graves based on the notion that the constitutional violations claimed by Leslie Bales were not well established. It should be understood that it was well established before March 2023 that as a  public school principal, like Graves,  violate the constitution by knowingly suppressing a parents complaint and using false and misleading information as one method of that  suppression.

21

A right is clearly established so long as Graves had  fair warning that the conduct at issue violated constitutional rights. *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) No  reasonable public official would have thought that knowing mistruths used to suppress a parents speech would pass constitutional muster. The Supreme Court has emphasized that a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question even where facts of the case at hand do not closely align with relevant precedent. *Taylor* v. Riojas, 592 U.S. 7, 9 (2020).  The notion that case law in the law enforcement context establishes that untruths in a warrant application violate the constitution somehow  do not apply to a public official such as a school principals is incorrect. In fact, qualified immunity was developed in large part to protect law enforcement officers faced with making  split second life or death decisions. The constitutional mandate that law enforcement officers should tell the truth certainly applies to  public officials who are not operating under excellent circumstances. The Bales did not pose an exigent threat. HISD and principal Graves and all the time they needed to investigate and evaluate the  alleged "facts" Graves used to support the issuance of THE CRIMINAL TRESPASS WARNING NOTICE to Leslie Bales. Yet the Complaint factually alleges that those "facts" include unvetted accusations all of which the Bales deny and most of which are as alleged in the Complaint were knowingly false when made by Gaves.

22

False or misleading reporting defeats a claim for qualified immunity. To argue otherwise undermines the rule of law. *See Hughes v. Garcia*, 100 F.4th 611, 623-24 (5th Cir. 2024) The *Hughes* teaching is long-established and incontrovertible law. That the *Hughes* opinion was written after the events in this case is irrelevant. The case itself makes clear that the opinion is based on long standing law. Moreover, the constitutional violations factually alleged in the Complaint are of the type that are so clearly violate the rights protected by the constitution that specific case authority is unnecessary.

Accepting Plaintiffs factual allegations as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have stated a claim that Graves violated Plaintiffs' constitutional rights, and both the rights and the violations of those rights were clearly established at the time of Graves violations. Plaintiff's claim for qualified immunity should be denied.

**IV.    Issue Three: Did the district court err in granting a12(b)(6) dismissal of Leslie Bales' 14th Amendment racial discrimination claims against Rita Graves claims against Rita Graves.**

The District Court in concluding The complaint fails to factually support knowing disparate treatment. The basis is that staff reporting led Graves to believe that Leslie Bales, a Black woman, was inappropriate and Bryan Bales,

23

a White man was not. This pretext for disparate treatment is factually addressed in the Complaint.

First, the staff reporting as discussed is all over the place and obvious contradictions were never investigated even though Graves had as much time as she needed to investigate before issuing a notice to anyone. *See* Section II above at numbered paragraphs 10-12, 15, and 18.

Further, the Notice was supported by accusations for which the Defendants' have no support. For example, although Graves claims in the Notice that Leslie had been a previous problem Defendants have absolutely proof of this.

Perhaps more significantly, Graves supports the Notice by asserting that Leslie was non-compliant because she was on campus March 3, 2023. The undisputed fact is that both Leslie and Bryan walked from their car to their bank that was in the campus. This is the day Davis drove his golfcart right at the,. So, both Bryan and Leslie objectively did exactly the same thing March 3, 2023. Yet only the Black Woman was issued the Notice.

The complaint's factual allegations are sufficient to meet pleading requirements at the 12(b) stage. Purported factual disputes do not justify pleading dismissal. The proper resolution of factual disputes for a different

stage in litigation. At this stage, Plaintiffs' factual allegations of their conduct and all events of March 1, 2023. must be accepted as true unless objectively and blatantly contradicted.

The Complaint factually alleges disparate treatment based on race. Although engaged in identical conduct, the Criminal Trespass Warning Notice was arbitrarily and capriciously sent to Leslie Bale's, a black woman, and not her husband, a white male. As factually pled in the complaint, identically situated individuals were treated differently based on their race.

The grant of the 12(b)(6) motion is error requiring reversal.

## V.   Issue Four: Did the district court err in granting a12(b)(6) dismissal of  Leslie Bales' 14th Amendment due process claims against Rita Graves?

The liberty right denied the Bales was their right to free speech, specifically their right voice complaints about HISD misconduct to someone who had authority to address their complaints. This right was systematically suppressed and taken from them from the moment they set foot on the campus for sole  purpose of expressing criticism of HISD e employee mistreatment their  daughter Maegan. Defendants use of the grievance process is a clear example of both a substantive and procedural due process violation. A lawful grievance process would logically work as guardrail to protect a citizen's liberty interests from governmental abuse. Instead, as plaintiffs have factually alleged, Defendants' grievance process did the opposite. It was used

25

by government as a tool to suppress the Bales free speech rights. The Bales criticism was neither heard nor addressed. Instead, the grievance process was used to develop information to attack the Bales personally and publicly. and cause extraordinary delay, resulting in significant economic and emotional damage to the Bales. .

The court erred in granting the motion to dismiss the due process claim at the pleading stage and must be reversed.

## VI.     Five: Did the district court err in granting a12(b)(6) dismissal of Leslie Bales' First and 14th Amendment retaliation claims?

The factual allegations in the complaint supporting retaliation against Nathan for his parents decision to speak out has been discussed throughout this brief. *See* Section II Paragraph 19. The district court found the actions against Nathan insignificant. It should be recalled that prior to The bales filing a grievance Nathan I was not to any school discipline. Three days after the grievance was filed an HISD employee, pulled Nathan out of an ongoing class, berated him so loudly that the teacher came out to check on Nathan, and the employee accused Nathan of stealing school clothes and threatened him with suspension. This one shocking example that is factually pled in the Complaint alone factually should be sufficient to state a claim for retaliation at the pleading stage. There is nothing in The record to indicate that The were at all def as parents. Nathan is their third child to graduate from Lamar High School. The issue at the pleading stage is not how a good parent react. The

26

issue is whether a body of government violates the Constitution of The United States when they retaliate on a child the decisions made by his parents. The facts in the Complaint support the claim that retaliation occurred. This should never be the case. When it occurs, respectfully, few parents would not feel a chill in their right to speak. By its very nature, retaliation suppresses speech and must not be permitted.

The factual allegations of retaliation in the Complaint are sufficient at the pleading stage. The court erred in granting the 12(b)(6) motion and this must be reversed.

**VII.   Issue Six: Did the district court err in granting a12(b)(6) dismissal of Leslie Bales' claims against Houston Independent School District.**

Respectfully, the factual allegations in this Complaint are sufficient at the pleading stage to identify a cornucopia of constitutional violations sufficiently extreme to support a ratification claim. March 1, 2023, the Bales went to visit the Welcome Center to speak with or make an appointment to speak with an administrator about the mistreatment of their daughter by HISD employees. This rather simple intention immediately morphed into a nightmare. From The moment they set foot on campus, Defendants, as factually alleged, did everything within their considerable power to suppress the Bales complaint. Among the tools used to suppress their speech was the grievance process. By law, when the Notice was issued the Bales had a right to appear before the Board within 90 days. This law

recognizes the significance of such a notice, and provides for swift resolution, Defendants alone delayed the Board appearance for more than 13 months—scheduling hearings and cancelling at will. The Boadr's failure to even address this unlawful conduct is  sufficient to support ratification. The clear failure, as factually pled, of HISD to hear and investigate the Bales complaint while instead circling the wagons to attack the Bales and retaliate against their son should have provoked at least a single member of the Board to perhaps ask a single  pertinent question—like why did we fail to have  a Board hearing on this in 90 days ? Instead, in fewer than 10 minutes of "deliberation" the Board approved everything its employees had done without question or exception, This certainly at the pleading stage *is ratification.*

**The** District Court erred  in granting the 12(b)(6)  motion to dismiss and must be reversed.

**VII. Issue Seven: Did the district court err in denying Plaintiff's request to amend?**

Plaintiffs identified specific topics for discovery to obtain clarification to better understand and  evaluate the parties' differing view of the facts. In that light, Plaintiffs prepared and sent a proposed 30B6 deposition notice to Defendants for consideration. ROA. 163-165, Defendants responded by moving to stay all discovery. ROA. 151-153. Plaintiffs responded. ROA. 157-161. The Defendants replied. ROA. 16 8- The 171. The district court took no action on it. This is say

Plaintiffs' have made known to court and counsel the specific issues important to a potential Complaint amendment. Plaintiffs perceive that a just result in this matter would be achieved by, if not discovery which is preferable, granting Plaintiff's a right to amend to attempt  address issues of fact on which there appears to be confusion.  No doubt the sheer length of Plaintiffs' Complaint is daunting. That length is of course in great part due to the need to comply with the advance of pleading requirements,

With the benefit of the district's order, Plaintiff's request that at minimum they be granted a right to replead.


**CONCLUSION**

Plaintiff's Complaint is factually sufficient to establish that Bryan Bales has standing for all his claims and factually sufficient to support all of Leslie Bales claims. The court therefore erred its order and judgment that it granted Defendants' dismissals, and the dismissals should be reversed. And remanded to District Court for further proceedings.

Alternatively, Plaintiffs request that the District Courts order and judgment be reversed and remanded  to the district court to permit Plaintiffs to amend their Complaint.

SUBMITTED BY
/s/ Jack Urquhart

Jack Urquhart

1302 Waugh Drive, No. 880

Houston, Texas 77019

Jack.urquhart47@gmail.com

832-723-2201

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitations of Federal Rule of Appellate Procedure because this document contains  5384 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure.

2. The complies with the typeface requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of the Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-Point Equity A.

*s/     Jack Urquhart*

Jack E. Urquhart

## CERTIFICATE OF SERVICE

I certify that on the on the 4th day of March 2026, this brief was served on counsel for all parties via by email and that copies of this Brief were served on counsel for all parties March 7, 2026, via by CM/ECF.

 /s/ Jack Urquhart
Jack Urquhart
